Seguine *v.* Seguine.

----

SAME TERM.     *Edmonds,* Justice.

SEGUINE, appellant, *vs.* SEGUINE, respondent.

A literal compliance with the formula required by the statute, in the execution of wills, is not necessary. A substantial compliance is enough.

Where, at the instant of executing a will, made since the revised statutes, and immediately upon completing his signature, the testator laid down his pen, put his finger on the seal, and said, in the presence of the attesting witnesses, " I acknowledge this to be my last will and testament ;" *Held* that this was a sufficient publication ; and that it was not necessary for the testator to *declare* it to be his last will and testament.

The object of the provisions of the statute respecting the publication of wills, was to secure evidence that the testator, when he executed the instrument, knew that it was a will, and not an indenture, or deed of a different character. *Per* EDMONDS, J.

Seguine *v.* Seguine.

The request to tne subscribing witnesses to a will to become such, may be made by the testator *previous* to affixing his own signature ; provided it be made at the same interview at which the will is signed and published by the testator, and as a part of the *res gestæ ;* one act immediately following the other without any interval, and without any interruption to the continuous chain of the transaction.

A subscribing witness to a will is not disqualified for proving its execution, by having taken, from the executor named in the will, a lease of personal property belonging to the estate.

The statute does not point out any mode or form in which testimony shall be taken, on the proving of a will before the surrogate. It is therefore enough if the testimony be attested by the solemnity of an oath, with full opportunity of examination, for both sides.

IN EQUITY. This was an appeal from a decision of the surrogate of the county of Richmond, admitting to probate the will of Joseph Seguine. The testator, on the 2d of April, 1844, made his will, which bore the following attesting clause, and none other : "Published, pronounced and declared by the said Joseph Seguine, to be his last will and testament, in the presence of us ;" which was signed by three witnesses. The attesting witnesses were all examined before the surrogate. One of them testified that he was employed by the testator to draw his will, and received from him written instructions therefor. That after drawing it, and submitting it to the examination of the testator, who said it was right, and when no one was present but those two, the testator told him that he had selected him and the other two witnesses, (naming them,) to be witnesses to his will, and then sent his servant for those other two to come to his house. They came in together, and the testator then told one of them that he had sent for them to be witnesses to his will. He then signed it in their presence, declared it to be his will, and then the witnesses signed it in his presence, and immediately left the room. This witness testified that he did not then know that it was necessary, under the statute, for the testator to request the witnesses to sign as such. Another of the witnesses testified that when he entered the room, the testator said to him, " Sheriff, I have sent for you as one of the witnesses to my will ;" and that after the testator had signed it, " he shoved the paper or handed it over to the witness to witness or sign it." The third witness testified that

when he entered the room, the testator told him he wanted him to be a witness to his will. But all the witnesses testified that nothing was said to them, after that, about their being witnesses to the will.

On the trial before the surrogate, the contestants offered to prove who were the heirs and next of kin of the testator, and their situation in respect to property ; which evidence was excluded by the surrogate. They proved that one of the witnesses to the will, after the death of the testator, took from the respondent, who was executor and devisee under the will, a lease both of real and personal property belonging to the estate ; whereupon he was objected to as interested and incompetent, but the objection was overruled.

It also appeared, from the return, that after one of the witnesses to the will had been sworn before the surrogate, and partly examined, it was discovered that one of the next of kin of the testator had not been made a party to those proceedings ; whereupon the hearing was adjourned; and a citation to him issued. He appeared before the surrogate, and the hearing proceeded. The witness, without being re-sworn, was examined de novo, and then signed and made oath to the truth of his deposition.

*H. Ketcham & G. Wood,* for the appellants. I. The testimony of all the witnesses to the will was required, as they were all living in the state at the time of proving the will, of sound mind and competent to testify. (*Laws of* 1837, *p.* 527, § 17. *Law of Surrogates and Executors, p.* 26.) William Shea, one of the witnesses, was produced, but not examined under oath ; his testimony was not therefore taken in the cause. Shea was indeed sworn, before all the heirs and next of kin were cited to appear—that was another matter; and not the one in which he should have testified. (*Laws of* 1837, *p.* 526, §§ 9, 10. 1 *Greenl. Ev.* § 328. 5 *Mason,* 18. 1 *Starkie,* 80, *part* 1, § 54.) II. The surrogate erred in refusing admission of testimony in answer to the question, " Did the testator leave any, and what brothers and sisters him surviving ?" And also

in refusing to admit other testimony offered in regard to their situation in life ; all of which was material, circumstantial evidence on the question of freedom from restraint and undue influence. III. If the testimony excluded by the surrogate were improperly excluded, then the decision of the surrogate was erroneous, and must be reversed. (2 *R. S. 3d ed.* 130. *Id.* 66, *2d ed.*) IV. The testator did not request the witness Shea to sign as a witness. Such a request was necessary to the validity of the will. (2 *R. S.* 124, 3d ed. *Id.* 64, 2d ed. § 32, *subd.* 4.) V. The testator did not DECLARE to the witness Shea, or to either of the witnesses, that the instrument subscribed by him was his last will and testament, in the true sense and meaning of the statute. The word DECLARE was incorporated in the statute advisedly. The revisers did not recommend its insertion, but it was incorporated by the legislature, on its own motion. The court is therefore bound to give full force to the word. The statute is remedial, and the court must give such a construction to the act as will repress the mischief, and advance the remedy. The mischief is fraud and imposition practised upon persons making wills. The remedy is an open declaration that the instrument is a will. " Declare," says Johnson, "1. To make known ; to tell evidently and openly. 2. To publish ; to proclaim. 3. To show in open view ; to show an opinion in plain terms." To *assent* is not to declare. To *acknowledge* is not to declare. To declare includes to *publish,* and of this last phrase it is said in *Ross* v. *Ewer,* (3 *Atk.* 156,) "The only question is whether the testator published it ; for there was no doubt of his executing it in the presence of three witnesses, or of their attesting it in his presence ; which shows that publication is in the eye of the law an essential part of the execution of a will, and not a mere matter of form." (1 *Powell on Dev.* 5 *Law Lib.* 52. *Heyer* v. *Burger,* 1 *Hoff. Ch. Rep.* 20.) VI. If the witness *Shea* did not sign his name at the end of the will at the request of the testator, then the will was not duly executed and attested, even should the other witnesses have been duly requested to sign it as witnesses. The requirements of the statute are, that each

Seguine v. Seguine.

of the attesting witnesses shall sign at the request of the testator. A request to two is not enough. VII. The witness Israel Oakley was examined as to his interest; and on such examination was shown to be interested. His testimony should therefore have been excluded. Oakley hired from Henry S. Seguine, one of the legatees, a lighter or scow, and was to have one half of the earnings. This scow, and all the other personal property, belonged to Henry, if the will were sustained. Oakley was therefore interested in supporting the title of Henry S. Seguine. (*Doe* v. *Williams*, *Cowp.* 621. 2 *Steph. N. P.* 1725 *to* 1728. 5 *T. R.* 174. 2 *Vern.* 317.) VIII. It is not shown that the subscription made by the testator was made in the presence of each of the attesting witnesses; nor that it was acknowledged by him, to each of the attesting witnesses, to have been so made. *Shea* says that the subscription was made in his presence. So says Oakley. But Decker cannot swear that it was made in his presence. If the subscription was made in the presence of two subscribing witnesses, and an acknowledgment made to the third, the will was not legally executed. It is not therefore made out by proof that the will was legally executed. IX. Oakley and Decker were not requested to sign their names as witnesses. It has already been shown that Shea was not. (*See App. to Dayton's Law of Surrogates and Ex'rs, form of deposition in App.* 40, 44; *Remsen* v. *Brinkerhoof*, 26 *Wend.* 325; *Id.* 332, *opinion of Chief Justice Nelson.*) "The statute itself is plain, and it is to be hoped will be obeyed in a way to leave little or no room for construction." (*See also opinion of Verplanck, senator, Id.* 335 *to* 337; *Rutherford* v. *Rutherford*, 1 *Den.* 33.) X. It should have been shown, *upon proof taken*, that the testator, at the time of executing the will, was in all respects competent to devise real estate, and not under restraint. (2 *R. S.* 120, § 10, 3*d ed. Id.* 59, 2*d ed.*) The affirmative proof, under this section, must be made by the party propounding the will for proof. (*Vide* 10 *Paige*, 91.) The chancellor says: "The legislature has seen fit to prescribe certain legal requisites to the due execution of a will; all of which must be substantially com-

plied with, or the will is void in law.   And the *onus* of satisfy-
ing the court that these forms were complied with lies upon the
party seeking to establish the will." In 1 *Greenl.* 89, § 77, it
is said, " in the probate of a will, as the real question is, whether
there is a valid will or not, the executor is considered as hold-
ing the affirmative, and therefore he opens and closes the case,
in whatever state or condition it may be, and whether the ques-
tion of sanity is or is not raised."   With these principles accord
the precedents established by the surrogate.   (*See Law of
Surrogates and Ex'rs, App.* 40, *No.* 2.)   It was shown by all
the witnesses that the testator was of sound mind and memory;
but it was not shown that he was a citizen of the United States.
And if he were not a citizen, he could not devise real estate;
for no estate or interest in real property not descendible to him
could be devised.   An alien's estate is not descendible.   (2 *R.
S.* 56, § 2, *2d ed.*)   Therefore it is not shown that the testator
was in all respects competent to devise real estate.   Nor was it
shown that the testator *was not under restraint.*   Shea was
the only witness examined on this point.   The question pro-
pounded was, " At the time the testator executed this paper
purporting to be his last will and testament, was he under any
restraint?"   Answer, " No sir; I don't know that he was un-
der any restraint.   He did not appear to be under any restraint."
No other witness was interrogated on the point.   XI. The
paper purporting to be the last will and testament of Joseph
Seguine, should not have been admitted to probate.

*Lot C. Clark & D. B. Ogden,* for the respondents. I. Each
of the three attesting witnesses signed his name at the end of
the will, at the request of the testator.   (*Rutherford* v. *Ruther-
ford,* 1 *Denio,* 33.   *Grant* v. *Grant,* 1 *Sandf. Ch. Rep.* 238.
10 *Paige,* 91.)   II. The testator was in all respects compe-
tent to devise real estate, and not under restraint.   (2 *R. S.* 3,
§ 13.)   The law presumes every testator to be competent, until
the contrary is shown.   And the burthen of showing that he
was incompetent, or acted under restraint, rests upon those op-
posing the probate.   (*Hoge* v. *Fisher,* 1 *Peters'* C. C. 163.

*Jackson* v. *King*, 4 *Cowen*, 207. *Jackson* v. *Van Dusen*, 5 *John.* 144. *Stevens* v. *Van Cleve*, 4 *Wash. C. C.* 262. *Gerrish* v. *Nason*, 9 *Shep.* 438.ˑ *Potter* v. *Bingham*, 10 *N. Hamp. Rep.* 514. 1 *Jarman on Wills*, 27. 2 *Greenl. Ev.* 373, § 689. 1 *Id.* § 42. *Brooks* v. *Barrett*, 1 *Pick.* 94. *Kinlock* v. *Palmer*, 1 *Rep. Con. Ct.* 216.) The sound memory of the testator is to be judged from his words and acts at the time. (*Boyd* v. *Eley*, 8 *Watts*, 66.) III. It is not necessary that each of the witnesses should recollect all the circumstances attending the attestation; but if one recollects, and the others do not, or even, if the attestation clause is correct, and all the witnesses have forgotten the circumstances, the will may be admitted to probate. (*Griffith* v. *Griffith*, 5 *B. Monroe's Rep.* 511. 10 *Paige*, 91. *Grant* v. *Grant*, 1 *Sandf. Ch. Rep.* 235. *Cowen & Hill's Notes to Phil. Ev.* 1349. *Jackson* v. *Vickory*, 1 *Wend.* 406. *Jackson* v. *Betts*, 6 *Cowen*, 377. *Dan* v. *Brown*, 4 *Id.* 483. 2 *Stark. Ev.* 922. *Davis* v. *Mason*, 1 *Pet.* 503. *Lindsay* v. *McCormack*, 2 *A. K. Marsh.* 229. *Dudleys* v. *Dudleys*, 3 *Leigh*, 436. *Mickle* v. *Matlock*, 2 *Harr.* 86. *Clarke* v. *Dunnavan*, 10 *Leigh*, 13.) IV. The surrogate properly overruled the testimony respecting the number of relations of the testator, left him surviving, and their pecuniary circumstances. (1.) The question had been fully answered, as to the appellants, in the first examination. That examination is binding upon the appellants, as they were then parties. (2.) The question was irrelevant, without an offer of other testimony, or an avowal of the object for which it was to be introduced. The offer should have shown its relevancy; for standing alone it does not appear to have any bearing upon the case. (3.) But had the testimony been relevant, it was directed to the date of the testator's death, and not of the making of the will, and it has been decided that all the testimony must point to the latter period. (2 *Greenl. Ev.* 576, § 690. *Atty. Gen.* v. *Parnther*, 3 *Brown's C. C.* 443. *White* v. *Wilson*, 13 *Ves.* 87. *Davis* v. *Calvert*, 5 *Gill & John.* 300.) V. William Shea was properly examined as a witness. He was sworn at the commencement of his first examination, and

no objection was taken to his being re-examined. But the usual form of taking written testimony is, to reduce the examination to writing, read it over to the witness, and let him sign and swear to it; which was the course adopted on the second examination. VI. The present appellants were parties to the first examination of the witnesses Shea and Oakley, as returned by the surrogate, and as the heir at law, omitted in the first citation, is not a party to this appeal, the whole testimony is binding upon the appellants. VII. The decision of the surrogate is like the finding of a jury upon a question of fact. It is presumed to be correct until impeached as erroneous. The justice should not interfere unless he is satisfied that it is manifestly against the weight of evidence and is not just. (2 *R. S.* 10, § 57, 2d ed. *Idem,* 507, § 95.) An acknowledgment or publication need not necessarily be made by word of mouth. ( *White* v. *Birtish,* 6 *Bing.* 310. *Ray* v. *Walton,* 2 *Marsh.* 74. *Small* v. *Small,* 4 *Greenl.* 220.) An attestation clause showing upon its face that the will was properly executed, is not absolutely necessary to its validity. ( *Chaffee* v. *Baptist Miss. Conv.* 10 *Paige,* 85. *Jackson* v. *Christman,* 4 *Wend.* 282.) Declarations of the testator are evidence, whether made before or after the execution, or at the time, if a part of the *res gestæ.* (1 *Gallis. C. C. Rep.* 170, *Prec. Wills,* 629.) In *Brinkerhoof* v. *Remsen,* (8 *Paige,* 499,) the chancellor says, "It would probably have been a sufficient publication had the attestation clause been read over to the testatrix, so that it would appear she knew what she was executing." "No particular form of words is necessary, provided it amounts to a declaration that the instrument is his last will and testament." (*Idem, and Jarm. on Wills,* 71, 73.) An alien is not prohibited from making a will. (2 *R. S.* 2, § 1, 2d ed.)

EDMONDS, J. It was conceded on the argument that the testator was competent to devise, at the time of the execution of this will. And the only question before me, relative to the validity of the will, is whether it was duly executed. It is well established, on this return, (1.) That the testator subscribed the

Seguine *v.* Seguine.

will, at the end of it ; (2.) That he did so in the presence of each of the attesting witnesses; and (3.) That there were at least two attesting witnesses, each of whom signed his name as a witness, at the end of the will.  But whether they did so at the request of the testator, and whether he did, at the time of the subscription to the will, declare it to be his last will and testament, were the points discussed before me, which I am called upon to decide.

I assent fully to the remark that the requisites of the statute should be strictly enforced, and that it is far better that one, and even many, wills should be set aside, than that the safeguards which the wisdom of the statute has thrown around the aged and the weak, in their dying hours, should in the least be impaired by a course of loose or liberal construction.  But while this principle is fully implanted in the law, and while our courts have, with commendable firmness, insisted upon a rigid compliance with the formula required in our statute on wills, they have never held that a literal compliance was necessary.  A substantial compliance is enough.  The chief justice, in delivering the opinion of the court for the correction of errors, in *Remsen* v. *Brinkerhoff,* (26 *Wend.* 332,) lays down the true rule, that no form of words is necessary.  The only sure guide for the courts is to look at the substance, sense and object of the law, and with the aid of these lights, endeavor to ascertain if there has been a substantial compliance.

By these principles the question now before me must be determined.

1. *As to publication.*  All the witnesses agree that at the instant of executing the will, and immediately upon finishing his signature, he laid down his pen, put his finger on the seal and said, " I acknowledge this to be my last will and testament."  If he had used the words I *declare* this to be my last will and testament, it would have been a literal compliance with the statute.  But can that be necessary ?  I am not aware of any case, especially on a remedial statute, where it has been exacted.

The object of the statute was to secure evidence that a tes-

Seguine *v.* Seguine.

tator when he executed the instrument, knew that it was a will, and not an indenture or deed of a different character. That object has been fully attained in this case ; and it is most manifest that the testator knew and intended to make known or communicate to the attesting witnesses, by words and signs, that the paper which he then subscribed was his last will and testament. The surrogate was right, then, in holding this to be a sufficient publication.

The next point is, *that the witnesses were not properly requested to become such.* There is no doubt that they were, each of them, in fact so requested by him. But the objection is, that this request was preferred before the will was signed, and not at the instant of its execution, or immediately afterwards. The statute, though it does, as to publication, contain a provision as to the time at which it shall be made, viz. the time of subscription, does not contain any as to the time when the witnesses are to be requested ; and we are not, in that regard, bound down by any express enactment. To give force and efficacy to this objection we must do so by construction, or rather by establishing a new rule by decision of court. I do not discover any good reason for laying down any such rule. The attesting witnesses are regarded in the law as persons placed around the testator in order that no fraud may be practised upon him in the execution of his will, and to judge of his capacity. (2 *Greenl. Ev.* § 691.) Our statute, by a provision not commonly found in statutes on wills, has conferred upon the testator, alone, the power of selecting the persons who are thus to be placed around him. And when it is ascertained that the attesting witnesses, his protectors against fraud, and the judges of his capacity, have been freely chosen by himself and not imposed upon him by others, the whole purpose of the law is answered, and its requirements are literally as well as substantially complied with. In this case there is no doubt that the testator enjoyed and exercised this freedom of choice, and exercised it in such a manner that his request to the witnesses was as much a part of the *res gestæ* as any other ingredient in the execution of the will. His subscription to the will, his publica-

tion of it, his request to the witnesses, and their subscriptions, were all done at the same time; not at the same instant of time, for that would have been impracticable; but at the same interview, one act immediately following the other without any interval and without any interruption to the continuous chain of the transaction. This was enough. It was a strict compliance with the requirements of the statute.

This disposes of all the objections to the validity of the will. The others discussed before me, relate to the form of the proceedings before the surrogate. I very much doubt whether I have authority, under the special power conferred upon me by the statute, in respect to this appeal, to review any other decision of the surrogate than his final one admitting or refusing to admit a will to probate. But the view I take of the residue of this case, renders a decision on this point unnecessary.

There are several very satisfactory answers to the objection taken to the mode in which one of the witnesses was re-examined. In the first place, so far as these appellants are concerned, the examination of the witness was entirely regular in point of form; for while they were parties to the proceedings before the surrogate, he was first duly sworn and then examined and cross-examined. In the next place, the statute does not point out any mode or form in which testimony shall be taken before the surrogate. It will be enough if it be attested by the solemnity of an oath, with full opportunity of examination for both sides. And lastly, if there was an irregularity, the appellants must be considered as having waived it. They made no objection at the time, when if they had, it might have been easily obviated; and it is now too late.

The objection as to the exclusion of the testimony offered in respect to the number and situation of the next kin, seems to me to be also unfounded. The testimony might have been proper, if the question of the competency of the testator to make a will had been mooted before the surrogate. But it was not. The only question raised below was as to the validity of the execution of the will, and as to that, the testimony offered was irrelevant. The competency of the testator being admitted be-

fore me, shall I send the case down to a jury to take testimony as to the number and condition of the testator's heirs and next of kin? To what end? and what possible bearing could the testimony, if taken, have upon the only question before me, the proper execution, namely, of the will?

Nor do I see any thing wrong in the surrogate's decision as to the interest of one of the witnesses. His hiring of the executor a part of the personal property of the estate, does not render him an interested witness. If it had been suggested that the terms of his hiring had been unfair or unreasonable, it might shake his credibility ; and if it went far enough to show subornation, might affect his competency. But there is nothing of that kind in the case ; and the mere fact of his hiring the scow, or lighter, did not disqualify him. And as to his hiring the real estate, it is too late now to make the objection. It was not made below, when, if valid, it might have been obviated by a release.

For these reasons I shall affirm the surrogate's decision, admitting the will to probate.

----

SAME TERM. *Before the same Justice.*