JEFFERSON COUNTY—HON. MILTON H. MERWIN, SURROGATE—February, 1861.

## VAN HOOSER *v.* VAN HOOSER.

*In the Matter of proving the Last Will and Testament of* HENRY J. VAN HOOSER, *deceased.*

Where one of the subscribing witnesses, in the presence of the other, asked the testator if the name at the end of the instrument, pointing to it, was

his signature, and the testator replied that it was,—*Held,* sufficient as a subscription in the presence of both witnesses.

The testator, in the presence of both witnesses, held the instrument open in his hand, and said to one of the witnesses, "I want you to witness my will," which the witness did; and then said to the other witness, "I want you to witness it too," which the other witness did. *Held,* sufficient as a publication.

The witness must be informed by some unequivocal act or word of the testator that the instrument which the testator has subscribed is his last will and testament. If this is done, it is a substantial compliance with the statute; and nothing less than this will do.

This was an application for the proof of the will of Henry J. Van Hooser, deceased. The widow presented it for probate, and it was contested by some of the heirs. The facts are fully stated in the opinion.

HUBBARD & LANSING, *for Petitioner.*

W. C. THOMPSON, *for Contestants.*

S. D. BARR, *Guardian for Minors.*

THE SURROGATE.—Section 35 of 3 *Rev. Stat.,* 5 ed., 144, provides that a will shall be executed and attested as follows:

I. It shall be subscribed by the testator at the end of the will.

II. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

III. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

IV. There shall be at least two attesting witnesses, each of whom shall sign his name as witness at the end of the will, at the request of the testator.

It is not disputed that the first and fourth requisites are complied with, but objection is raised that the *second* and *third* requisites are not complied with. The evidence as to the second requisite is as follows:

The attesting clause recites that the will was subscribed by

the testator in the presence of the witnesses. James C. Douglas, one of the subscribing witnesses, on his direct examination, says: "I cannot tell positive whether Mr. Van Hooser subscribed his name in my presence; I cannot say that I saw V. H. sign it: he said it was his will in the presence of father and myself—both were there. I think he signed it at the same time." On cross-examination, in answer to the question, Did you hear V. H. say that the name purporting to be his to that paper was his signature, this witness said: "I can't swear positive, but think he did say so."

The witness, James Douglas, says: "I can't say whether I saw V. H. sign it." On cross-examination, he says: "I don't recollect that I saw V. H. write any thing then; don't recollect whether his name was there, or whether he put it down then. It was there when I signed the will. I asked him if that was his name there, if he put it there with his free will and accord, and he said yes. This was at the time I signed as witness, and after I took the pen."

The evidence as to the *third* requisite is as follows: James C. Douglas testifies: While in the room, "V. H. asked me to be a witness to his will. I told him, if it was his request, I would do it. I thereupon signed the paper shown me (the will). He might have read over the paper to me, but can't say he did. He said it was his will, in presence of father and myself." On cross-examination he said: "It was after this (that is, after the request to witness to sign), that he said to father, You will sign it too. I can't say that he mentioned the word *will*, only when he asked me to sign as witness; or called the paper his will at any other time. I think he then turned round to my father, and said he wanted him to sign it too. When V. H. wanted me to sign his will, he held the paper in his hands: think it was open; and I can't say he said any thing more until I signed it." James Douglas says: "Testator said to me, You wanted I should witness your will; now I want you should witness mine. I did; that is my name to the paper. This is the instrument he showed me as his will and requested me to sign—all there, when he said it was

his will." On cross-examination this witness says : "I heard him ask ·James C. to witness his will. After he spoke to James to witness it, he wanted I should, and I said I was too old ; he said that wouldn't make any odds. I have a recollection that I put my name to his will. The only time I can tell of, that V. H. mentioned the word *will*, was when he asked James to witness his will." The attesting clause is also regular on this point.

In *Jauncey* v. *Thorne* (2 *Barb. Ch.*, 40), there were three subscribing witnesess : none saw the testator sign. To one of them he acknowledged the signature, but said nothing about its being his will. The second witness testified that the testator pointed to the paper, and told him to sign as witness ; and witness thinks he said it was his will. The third witness testified that the testator acknowledged and declared the instrument to be his will, and requested him to sign as witness, and that the other witnesses were present. This, the chancellor held sufficient, under the act of 1813 (1 *Rev. Laws of* 1813, 364), which required the will to be attested and subscribed by three or more witnesses : that it was not ꞌnecessary for each witness to swear to all the requisites of the statute : that the attesting witnesses should see the testator sign the instrument, or say or do something in their presence and hearing, indicating that he intends to recognize the instrument, upon which his name appears, as his will, but he need not so expressly declare it : that the court will presume liberally in favor of wills, when, after lapse of time or other circumstances, it is impossible to give positive ·evidence. The will was dated in 1825, and propounded in 1835.

In *Remsen* v. *Brinckerhoff* (26 *Wend.*, 325), the attesting clause was full, the witnesses testified that the testatrix signed her name in their presence, acknowledged it to be her signature for the purposes therein mentioned, but no one said that the instrument was a will, nor was it or the attesting clause read over. *Held*, under the law of 1830 (2 *Rev. Stat.*, 1 ed., 7, § 40), which is substantially like the present, that there was no valid execution. The chief-justice (NELSON),

however, says (p. 331), that no form of words is necessary; "the Legislature only meant there should be some communication to the witnesses, indicating that the testator intended to give effect to the paper as his will. Any communication of this idea, or to this effect, will meet the object of the statute. . . . . . . The mere want of recollection of the witnesses that the testator indicated the instrument to be his will, after signing the attestation clause, ought not to be evidence *per se* of non-compliance with the statute. After this there should be something like affirmative proof of the want of publication."

In *Nelson* v. *McGiffert* (3 *Barb. Ch.*, 158), the question was, whether the witnesses signed at the request of the testator. The attestation clause was full; two did not recollect, and the other did. *Held*, good: that if after a lapse of time (from 1832 to 1840), the witnesses do not remember, but the attestation clause is full, a court may infer that the requisites were complied with (*Newhouse* v. *Godwin*, 17 *Barb.*, 236); —that in the execution of wills the statute does not require any particular form of words to be used by the testator, either in the admission of his signature in the publication of the instrument as his will, or in the communication to the witnesses of his request or desire that they should subscribe their names as attesting witnesses, but that it is sufficient if the formalities required by the statute are complied with in substance.

*Seguine* v. *Seguine* (2 *Barb.*, 385), recognizes a similar principle. EDMONDS, J., says, in regard to the publication: "The object of the statute was to receive evidence that a testator, when he executed the instrument, knew that it was a will and not an indenture, or deed of a different character."

In *Lewis* v. *Lewis* (11 *N. Y.* [1 *Kern.*], 220), the attesting clause was full. One of the witnesses testified that the testator called the witnesses into his office, where he had a paper, of which he turned up so much as would allow them to write their names, requesting them to sign their names and add their residences; and also said, "I declare the within to be

my free will and deed." This was all that was said, and the witness did not see the testator sign, or see his signature, and did not know what the instrument was. The other witness did not remember any thing more. *Held*, that the instrument was not properly executed as a will. ʾ(Same case in 13 *Barb.*, 17.) So a will is duly executed when the several acts required by the statute have been performed at the same time, whatever the order in which such acts were severally performed. (*Doe* v. *Roe*, 2 *Barb.*, 200; *Keeney* v. *Whitmarsh*, 16 *Barb.*, 141.) In *Chaffee* v. *Baptist Missionary Convention* (10 *Paige*, 85), the subscribing witnesses testified that when they went into the decedent's room, she took the instrument, which then had her name to it, out of her drawer, and putting her finger on her name, said, "I acknowledge this to be my last will and testament," but did not admit that she had subscribed her name to the will, or that it had been subscribed at her request. *Held*, not enough,—there was no acknowledgment of the subscription. In Rutherford v. *Rutherford* (1 *Den.*, 33), one of the witnesses told the other as he came into the room, in the presence of the testator, in answer to the question what they wanted him to sign, that it was "the will or agreement" of the deceased, and that he (the deceased) wanted him to sign it. *Held*, not sufficient evidence of publication.

In *Seymour* v. *Van Wyck* (2 *Seld.*, 120), the testator told one of the witnesses that he had had a codicil to his will written. He asked for his will: it was handed to him. Witness told him it would require two witnesses. The other witness was then called, and came in. Testator then signed the codicil; and afterwards the witness signed, but nothing else was said by the testator about its being a codicil. *Held*, void on account of no declaration to the second witness, that it was a codicil to his will. The inference is, that the declaration to the first witness was sufficient. In *Brown* v. *De Selding* (4 *Sandf.*, 10), one of the witnesses, before the other came in, asked the testator if "she wished to sign," or "sign her will," he could not tell precisely which. The testatrix thereupon got

up, the other witness came in, and the testatrix asked " where she must sign the will," and on the place being pointed out, took the pen and signed. The other witness testifies that when he came in, the first witness told the testatrix he was the person whom he had invited to come in and witness her signature to her will: that "she distinctly asked where the proper place was for her to sign." Also, he spoke of " her asking the question about the place where to sign the will." *Held*, no declaration.

Where the witnesses are dead, or from lapse of time do not remember the circumstances attending the attestation, the law, after the diligent production of all the evidence then existing, if there are no circumstances of suspicion, presumes the instrument duly executed. (*Butler* v. *Benson*, 1 *Barb.*, 526, *and cases there cited.*) In this case, ten years had elapsed, one of the subscribing witnesses had nearly forgotten the whole transaction, and the other about as much lost on important points.

The reading of the attestation clause in the presence of the testator and the witnesses, followed by the affirmation of the testator that it is his will, is a sufficient acknowledgment of the signature. (*Whitbeck* v. *Patterson*, 10 *Barb.*, 608.) It must appear that the testator intended to give the witnesses to understand that it was his last will and testament, and that he had subscribed it as such; and if the witnesses knew that the paper was his last will and testament, from communication made to them by him, or in his presence, it is sufficient. (*Torry* v. *Bowen*, 15 *Barb.*, 304. See, also, *Burritt* v. *Silliman*, 16 *Id.*, 198 ; *McDonough* v. *Loughlin*, 20 *Id.*, 238 ; *Nipper* v. *Groesbeck*, 22 *Id.*, 670.) In this last case, decided at the General Term of the fifth district, the question was whether there was a sufficient publication. The will was read over by the testatrix, and then read over to her in the presence of the witnesses. About an hour afterwards she requested to have the will brought, that she might sign it. It was brought and she signed it, and the subscribing witnesses then attached their signatures, at the suggestion and request

of the testatrix. One witness stated that after the will was read, the testatrix said: "Bring me the will, and I will write my name." *Held*, a sufficient publication. (See, also, 2 *Bradf.*, 42, 226, 261, 427, 163; 3 *Id.*, 78, 101, 353, 357, 35, 322.)

In the present case, it is to be observed, in the first instance, that the attesting clause is full; that the will was signed more than five years ago, as the witnesses swear, and about ten years by the date of the will; and that the recollection of the witnesses, in many instances, is not distinct. One of the witnesses swears he cannot tell positively whether Van Hooser subscribed his name in his presence, but thinks he did. On cross-examination, this witness, in answer to the question whether he heard the testator say that the name purporting to be his, to the paper, was his signature, says: "I can't swear positive, but think he did say so." The other witness asked the testator if that was his name there (pointing to the paper)—if he put it there with his free will and accord; and the testator said, yes, and then witness signed his name. Both witnesses testify that they were all there together until both witnesses signed; and if so, this declaration must have been made in the presence of both. There was no evidence to the contrary. I think the statute has been plainly complied with in this respect, and that the testator acknowledged his signature to both of the witnesses.

The only serious question in the case is, whether the testator, at the time of acknowledging his subscription, declared the instrument so subscribed to be his last will and testament. It was not done in those words, or by those terms. That is not necessary. The witnesses must be informed by some unequivocal acts or words of the testator that the instrument, which the testator has subscribed, is his last will and testament. If this is done, it is, to my mind, a substantial compliance with the statute, and nothing less than this will do. In this case, both witnesses, on the direct examination, testify that the testator declared to them that the instrument was his will. On cross-examination, neither recollects

that the word *will* was mentioned at any other time than when testator asked the first witness to witness "his will," and said to the other witness, "I want you to witness it too." Upon the cross-examination the case would stand thus : the testator, in the presence of both witnesses, held the instrument open in his hand, which had been signed by him, and the signature acknowledged to both witnesses, and said to one witness, in the presence and hearing of the other, "I want you to witness my will." The witness signed his name to the paper as witness ; and then the testator said to the other witness, "I want you to witness it too," and the other witness then signed his name as witness. This evidence alone would show that the paper to which the witnesses signed was called by the testator, in the presence of and to them, "*his* will." It makes no difference that this fact was communicated to them by the same act or words that requested them to sign as witnesses. The question is, *did they both understand, from some unequivocal act or saying of the testator to them, that the instrument was his will.* Mr. Surrogate BRADFORD, in *Rieben* v. *Hicks* (3 *Bradf.*, 358), well says : "The single question, in this class of cases, is, has the testator subscribed or acknowledged the will in the presence of the witnesses, made known to them its nature, and requested their attestation ; and have the witnesses subscribed their names? Simple performance of any one, will not be taken for performance of any other ; but performance of two or more at one time, is not void because there was a joint or connected performance. If the things required have been done, the *modus in quo* is not ordinarily of the slightest materiality."

In this case, taking into account the lapse of time, and the full attestation clause, together with the testimony as given, I think there is no doubt but that the testator, on the occasion of acknowledging his subscription, substantially declared the instrument so subscribed to be his last will and testament.

The will is, therefore, admitted to probate.