plaintiff from the defendants, as to which the defendants are in default on prior motions. If the plaintiff does not desire the order above indicated, the motion is granted, with $10 costs to be allowed as an offset against the $20 costs above mentioned.

Ordered accordingly.

(109 App. Div. 762)

## In re MOORE'S WILL.

(Supreme Court, Appellate Division, Fourth Department. December 6, 1905.)

1. WILLS—HOLOGRAPH—PUBLICATION—NECESSITY—SUFFICIENCY.

In order to constitute a valid will, testator must publish the will by declaring in the presence of the witnesses that the instrument attested by them is his will. although the will is holographic, and a holographic instrument cannot be admitted to probate where testator told the subscribing witnesses that it was not his will, but was merely a memorandum of his property which he expected to eventually use in its disposition, regardless of subsequent declarations of testator that he executed the instrument.

2. SAME—INTENTION OF TESTATOR.

The intention or motives of. testator, in connection with the execution and attestation of his will, are immaterial upon the question of the sufficiency of publication of the will.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 305.]

3. SAME—PROBATE PROCEEDINGS—PROOF OF PUBLICATION.

Code Civ. Proc. § 2618, relative to the probate of wills, requires subscribing witnesses to be produced and examined. Section 2620 provides that, if a subscribing witness has forgotten the occurrence or testifies against the execution of the will, the will may be established upon proof of the handwriting of testator and of the subscribing witnesses and of other circumstances. Section 2622 requires the surrogate, before admitting a will to probate, to inquire into all the facts, and to be satisfied of the genuineness of the will and of the validity of its execution. . Held that, where the subscribing witnesses testify against the will by showing facts negativing a proper publication, proponents are 'not bound by their testimony, and may prove the will by other testimony showing what was said and done at the execution of the will, but cannot supply the defect of proof caused by the adverse testimony of the subscribing witnesses by showing that such witnesses had previously and in contradiction to their testimony stated facts indicating that the will was properly executed and published.

Appeal from Surrogate's Court, Erie County.

In the matter of proving the last will and testament of Chester Moore, deceased. From a decree admitting the will to probate (95 N. Y. Supp. 61), the widow of deceased appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Edward Bosley, for appellant.

Simon Fleischmann, Frank S. Sidway, and William R. Pooley, for respondents.

SPRING, J. Chester Moore executed the instrument, which has been admitted to probate, about January 28, 1903. It was in his own handwriting, and the subscribing witnesses were husband and wife, neighbors of the decedent, and were old people bordering on 80 years of

age. Mr. Moore was a man of intelligence and of business ability, and had some information as to the statutory requirements pertaining to the execution of a will. Mr. Dennis, also apparently intelligent and of a fairly retentive memory, was somewhat familiar with these requirements. No evidence was given impeaching the will by reason of lack of testamentary capacity of the decedent, or that he was under any restraint at the time of its execution. The evidence was directed solely to what occurred at the time the witnesses subscribed the paper. They were asked one evening to go over to the Moore home to sign some papers. After reaching the house, Mr. Moore produced a paper entirely in his own handwriting, with his genuine signature at the end, and asked these neighbors to sign, which they did under the word "Witnesses." Mr. Dennis added their place of residence. Mr. Dennis asked Mr. Moore if he was making his will, and the latter replied, "No, this is only a memoranda I will use down town some day." Again, that it was "a memorandum, a list of his property," that he "would use at some future time to make out a will down town, or something of that kind." The witness was strenuous in maintaining that Mr. Moore stated he was not making a will, and that he did not say it was a memorandum of the manner he wished his property to be disposed of after his death. He did acknowledge to them that the signature at the end was his own. The testimony of Mrs. Dennis, in its essential features, does not vary from that of her husband. Mr. Moore left no children, but a widow and brother, and purported to dispose of all his personal property, amounting to about $50,000, by the instrument admitted to probate. He gave to his wife in general and specific legacies property aggregating about $10,000; to his brother, $5,000; to "his friend, Miss Lulu L. Bergtold," $10,000. The residue of his property was bequeathed to his executors, in trust to invest and pay the income to his wife during life, and upon her death the corpus was to pass to his brother and his children. The widow alone contested probate.

The beneficiary, Miss Bergtold, was not a relative of the decedent. The proof does not disclose what induced the bequest to her. There is an indirect intimation that the relations this legatee bore to the decedent had been the cause of discord in the Moore household. In any event, the legacy to Miss Bergtold is apparently the basis of the contest of the will, and the hostility of Mrs. Moore has been imparted to the subscribing witnesses. They were emphatic in testifying that they regarded this provision to Miss Bergtold unjust and unfair to the widow, and that they were against the probate of the will. We think the testimony of the subscribing witnesses is insufficient to show a substantial compliance with the statute governing the execution of wills. There was no declaration by the alleged testator that the paper was his last will and testament. On the contrary, he expressly negatived the suggestion that it was his will. He said it was a list of his property which he expected to use eventually in its disposition

The publication of the will by the proposed testator is one of the four indispensable requirements to its validity. It is important, first, in denoting that the testator knows the nature of the instrument he is executing, and to check any deception upon him. In the second place,

and also in order that there may be no imposition perpetrated, it is important that the subscribing witnesses understand that they are attesting the signature to the will of the person at whose request they severally subscribe their names.  They realize, if the document is a will, that they are expected to remember what occurred at its execution and be ready to vouch for its validity in court.  The declaration of the testator that the instrument is his will is not solely, therefore, for the purpose of showing that he knew he was executing his will.  His subsequent declaration that he executed the instrument propounded would not relieve the proponents of the necessity of proving what occurred at the time of the execution.  The statute is explicit in this requirement, and, while the reason for it may be to insure certainty that the person executing the alleged will knows what the paper is, yet to effectuate this purpose the witnesses selected must 'be apprised by the testator that they are to witness his will.  The instrument was holographic. In proving the execution of a will of that kind the evidence of its publication may be relaxed somewhat (Matter of Akers, 74 App. Div. 461, 77 N. Y. Supp. 643, Affirmed 173 N. Y. 620, 66 N. E. 1103 ; Matter of Beckett, 103 N. Y. 167, 8 N. E. 506) ; but the statute makes no distinction in favor of a will of that description (Matter of Turrell, 166 N. Y. 330, 59 N. E. 910 ; Matter of Andrews, 162 N. Y. 1, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294).  As was said in Re Turrell, where a will of that kind was under consideration, at page 337 of 166 N. Y., page 911 of 59 N. E. (48 L. R. A. 662, 76 Am. St. Rep. 294) :

"It must appear that, as between the testator and the witnesses, there was some meeting of the minds upon the understanding that the instrument was the testator's will, that it had been subscribed by him, and that the attestation of the latter was desired to the will so subscribed.  The facts, which we must accept in this case, are that there was absolutely no communication between the testator and the witnesses, at the time they signed their names to this paper, and they barely permit of the surmise on the part of the witnesses as to the nature of the transaction in which they were participating."

If the testimony of these subscribing witnesses is to be believed, they did not comprehend that the paper they were executing was the will of Mr. Moore.  This information is essential to its valid publication. The knowledge may be acquired by signs or in any other manner which discloses that the testator and the witnesses possessed it.  But, where the proof shows that the testator or the witnesses did not have this indispensable information, there is no publication within the meaning of the statute, and consequently no will.  The proof is explicit that this knowledge was not imparted to the witnesses.  On the contrary, Mr. Moore, as already indicated, pointedly said the instrument was not his will.  This gap in the proof cannot be supplied by resorting to the inference that the testator knew he was executing his will.  A testamentary disposition cannot be supported, however certain we may be of the intention of the alleged testator upon the hypothesis that he possessed the essential knowledge of the character of the instrument, but desired to withold that knowledge from his witnesses.  They must know what the instrument is.  That knowledge is both a reason and a necessity for the publication.  Possibly Mr. Moore did not wish his wife, who was present when the paper was signed, to understand that he was executing his will.  That information on her part might have re-

sulted in the disclosure of the Bergtold bequest. It may be that this desire induced him to refrain from publishing the will. We are not concerned with his motives. The intention of the testator has no bearing upon the question we are considering. In Matter of Will of O'Neil, 91 N. Y. 516–520; Matter of Whitney, 153 N. Y. 259–264, 47 N. E. 272, 60 Am. St. Rep. 616.

The learned surrogate, in his opinion, evidently does not rest his decision that the requirements of the statute were substantially fulfilled upon the testimony of the subscribing witnesses elicited upon the trial. There is no other direct proof relating to what occurred at the time of the execution of the instrument. After the death of Mr. Moore, attorneys representing the proponents of the will interviewed the subscribing witnesses. These attorneys testified that Mr. and Mrs. Dennis detailed to them on various occasions what occurred at the time they executed the will, reciting all the facts essential to its valid execution, including its publication by Mr. Moore. This proof was received, not merely to impeach the credibility of the subscribing witnesses, but to supply a defect in the proof of the alleged will. We may assume that these subscribing witnesses are hostile to the proponents, and yet they were obliged to produce them in their own behalf. Code Civ. Proc. § 2618. The ordinary rule, therefore, which forbids a party from impeaching the credibility of his own witnesses, may not apply in its stringency to the situation presented in this case. The relaxation of that rule of evidence, however, does not allow the proponents to make this contradictory impeaching testimony a substitute for a manifest failure to prove that the will was executed in the manner required by the statute.

Appeal is had to the sections of the Code of Civil Procedure to sustain the decision of the surrogate giving the force of original evidence to this testimony disparaging the veracity of these two subscribing witnesses. Section 2620 prescribes the mode of procedure to be pursued on the probate of a will in the event of the death, absence from the state, or mental incompetency or other disability of the subscribing witness, "or if such subscribing witness has forgotten the occurrence or testifies against the execution of the will, the will may * * * be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action." The witnesses were distinct and positive in their narration of what occurred. They had not "forgotten the occurrence." They did testify against the will. That circumstances does not prevent the will from being admitted to probate, providing there is adequate proof of its execution. If the subscribing witnesses testify falsely, the intention of the testator is not to be defeated merely because of their delinquency. If the proponents are able to give competent proof, despite the adverse evidence of these witnesses, that the will was executed conformably to the statute, then it may be established. If other witnesses who were present testify to the transaction, their evidence may overcome that of the subscribing witnesses. The section of the Code referred to, provides a course of procedure, not new by any means, to enable the will to be established, if properly executed, in case of the failure of the subscribing witnesses to

furnish the necessary supporting proof. Its aim is not to abridge, or impair, or in any manner trench upon, the formalities required in the proper execution of the will. Nor does it abate in any degree from the necessity of proving that the four statutory essentials have been complied with. By reason of the exigencies of the situation, the court may take other proof showing that these requirements have been substantially met, although contrary to the positive testimony of the subscribing witnesses. But the other witnesses produced are to testify to what was said and done at the execution of the will. They narrate facts, and from that narration the court finds if the will was duly executed. In the present case, as already noted, no witness was examined who was present at the execution of the will, except the subscribing witnesses, who disclaim any knowledge or intimation that they were signing the will of Mr. Moore. They may have stated otherwise at times when not under oath, but that hearsay evidence will not supply a palpable omission in the chief occurrence. Had there been conflicting testimony relating to the execution of the will, the statement of the subscribing witnesses tending to show that they had testified falsely or failed to recollect accurately what occurred, would have been competent to impeach them and shake faith in their relation of the main transaction. To that extent only is it available.

Section 2622 is invoked to aid the proponents. That section imposes the duty upon the surrogate, "before admitting the will to probate," to "inquire particularly into all the facts and circumstances, and must be satisfied of the genuineness of the will and the validity of its execution." The object of the provision is precautionary to enable the surrogate to prevent any imposition which may be attempted to be practiced upon him. Even though the subscribing witnesses testify to the proper execution, there may be suspicious circumstances surrounding the transaction. The testator may have been enfeebled mentally, he may have been under the control of the principal beneficiary, and the power is lodged with the surrogate and it is made his duty to be certain that the testator was not the victim of fraud or deception. The balance of the section authorizes a still further investigation of the occurrence and of the subsequent delivery and possession of the instrument propounded. These various provisions have long been in force. They are designed, as far as possible, to check any attempt to establish as a will an instrument originating under circumstances which will not bear investigation.

There is no attestation clause to the instrument propounded. It often happens that where a full attestation clause appears on the will presented, and the evidence shows that it was read by the subscribing witnesses or in their hearing at the time of the execution. evidence may supply either failure of recollection or perverse positive testimony of these witnesses that the requirements of the statute were not observed. In these various conditions which may arise in probate proceedings, there is considerable flexibility and latitude allowed in the manner of the proof; but there must in every instance be a fair compliance with the provisions which the Legislature has made necessary to the proper execution of a will. The proof may be varied to meet the particular case, but it must consist of facts connected with the execution of the

instrument presented.   The subscribing witnesses in this case were submitted to an extended examination by the several counsel representing the proponents.   It was sharp and insinuating, carried on with the severity of a caustic cross-examination.   The witnesses continued unshaken in their testimony that there was no declaration by Mr. Moore that the instrument was his will, asserting it was not his will or any' memorandum disposing of his property.   No other witnesses assumed to testify from actual knowledge what took place.   It would be a dangerous practice to uphold, to permit the will to be established in defiance of this positive testimony, because these witnesses told other people that Mr. Moore did publish the will to them at the time of its execution.   To prevent what is claimed to be a fraud in this particular case, we would open wide the door to immeasurable fraud and desception. Laxity of that dangerous description should not be allowed.

It is always to be regretted that the instrument which the alleged testator intended to contain the testamentary disposition of his property must be rejected by reason of a failure to comply with the requirements defined by the statute.   They have, however, been long in existence, are easily to be comprehended, serve a beneficial purpose, and no substantial departure from them is justified to help out any special case.   As was said in Matter of Andrews, 162 N. Y., at page 5, 56 N. E., at page 530 (49 L. R. A. 662, 76 Am. St. Rep. 294):

"It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements.   It is better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills."

The decree of the Surrogate's Court should be reversed, and new trial granted in Surrogate's Court upon questions of law only.

Decree of Surrogate's Court reversed, with costs of all parties on this appeal to be paid from the estate.   All concur.