In the Matter of the Probate of the Will of ROBERT PULVER-MACHER, Deceased. ISIDORE PECH et al., Respondents; PHYLLIS ALTMAN et al., Appellants.

Argued April 13, 1953; decided June 4, 1953.

*Bertram H. Siegeltuch* and *Walter M. Weisberg* for Phyllis Altman and another, appellants. I. The requirements of subdivision 3 of section 21 of the Decedent Estate Law must be complied with. (*Matter of Andrews,* 162 N. Y. 1; *Matter of Moore,* 109 App. Div. 762, 187 N. Y. 573; *Remsen* v. *Brinckerhoff,* 26 Wend. 325; *Lewis* v. *Lewis,* 11 N. Y. 220; *Matter of Turell,* 166 N. Y. 330.) II. As a matter of law, the undisputed testimony establishes a lack of due publication under subdivision 3 of section 21 of the Decedent Estate Law. (*Lewis* v. *Lewis,* 11 N. Y. 220; *Ex Parte Beers,* 2 Bradf. 163; *Wilson* v. *Hetterick,* 2 Bradf. 427; *Matter of Harris,* 1 Tuck. 293; *Matter of Dale,* 56 Hun 169, 134 N. Y. 614; *Matter of Delprat,* 27 Misc. 355; *Matter of Schillinger,* 258 N. Y. 186.)

*Abraham Zemlock, Albert J. Zemlock* and *Samuel Gewirtz* for Esther Feinberg and others, appellants. I. Although the order of reversal by the Appellate Division is upon " facts and on the law," that is not controlling as to the points raised upon

this appeal. II. The finding of a lack of publication by the Surrogate was amply supported by all the evidence before him. (*Ex Parte Beers*, 2 Bradf. 163; *Wilson* v. *Hetterick*, 2 Bradf. 427; *Matter of Palmer*, 42 Misc. 469.) III. Evidence of publication of a holographic will may be somewhat relaxed. Nevertheless a substantial compliance with the statute is essential. (*Brincker-hoof* v. *Remsen*, 8 Paige Ch. 487; *Remsen* v. *Brinckerhoff*, 26 Wend. 325; *Matter of Turell*, 166 N. Y. 330; *Matter of Levengston*, 158 App. Div. 69; *Matter of Billet*, 106 Misc. 229, 187 App. Div. 309; *Matter of Akers*, 74 App. Div. 461, 173 N. Y. 620.) IV. All cases cited by the majority of the Appellate Division are inapplicable to or may be distinguished from the facts herein. V. The rules regarding proof of testator's subscription or acknowledgment of his signature are not identical with rules regarding proof of publication. VI. Disbelief in the testimony of the two witnesses leaves no credible evidence of the execution of the instrument. (*Matter of Moore*, 109 App. Div. 762, 187 N. Y. 573; *Matter of Andrews*, 162 N. Y. 1; *Matter of Allen*, 282 N. Y. 492.)

*Homer 1. Harris* and *Samuel L. Zuckerman* for Isidore Pech, respondent. I. The requirement of subdivision 3 of section 21 of the Decedent Estate Law is to prevent fraud, and is not intended as a snare for the uninitiated and must be interpreted in such light. (*Lane* v. *Lane*, 95 N. Y. 494; *Matter of De Hart*, 67 Misc. 13; *Matter of Marley*, 140 App. Div. 823; *Matter of Winne*, 107 Misc. 398, 205 App. Div. 860; *Matter of Fowles*, 222 N. Y. 222; *Matter of Rausch*, 258 N. Y. 327; *Bator* v. *Hungarian Commercial Bank of Pest*, 194 Misc. 232; *Seguine* v. *Seguine*, 2 Barb. 385; *Gilbert* v. *Knox*, 52 N. Y. 125; *Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422.) II. The rule in respect to holographic wills as to manner and method of publication is not so close and severe as where the will is drawn and executed under the direction of an experienced draftsman. (*Matter of Levengston*, 158 App. Div. 69; *Matter of Billet*, 106 Misc. 229, 187 App. Div. 309; *Matter of Akers*, 74 App. Div. 461, 173 N. Y. 620; *Matter of Cottrell*, 95 N. Y. 329; *Matter of Beckett*, 103 N. Y. 167; *Matter of Wallace*, 148 Misc. 867; *Gilbert* v. *Knox*, 52 N. Y. 125; *Matter of King*, 200 N. Y. 189; *Matter of Palmer*, 42 Misc. 469; *Matter of Mullenhoff*, 278 App. Div. 963.) III. The

language of an opinion must be confined to the facts before the court and no opinion is an authority beyond the point actually decided, nor should it be extended to cases where different facts exist. (*Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71; *Adamec* v. *Post*, 273 N. Y. 250; *Crane* v. *Bennett*, 177 N. Y. 106; *Matter of Liberman*, 279 N. Y. 458; *Remsen* v. *Brinckerhoff*, 26 Wend. 325; *Ex Parte Beers*, 2 Bradf. 163; *Wilson* v. *Hetterick*, 2 Bradf. 427; *Matter of Harris*, 1 Tuck. 293; *Lewis* v. *Lewis*, 11 N. Y. 220; *Matter of Turell*, 166 N. Y. 330.) IV. The will may be admitted to probate even if one or both of the witnesses thereto testify against the execution of the will. (*Torry* v. *Bowen*, 15 Barb. 304; *Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422; *Matter of Cottrell*, 95 N. Y. 329; *Peebles* v. *Case*, 2 Bradf. 226.) V. The determination of the question of whether a will has been properly executed is a question of fact, in the determination of which there must be considered not only the testimonial proof but the factual situation. (*Roberts* v. *Fulmer*, 301 N. Y. 277; *California Packing Co.* v. *Kelly Stor. & Distr. Co.*, 228 N. Y. 49; *Remsen* v. *Brinckerhoff*, 26 Wend. 325; *Matter of Rosenthal*, 100 Misc. 84; *Matter of Cottrell*, 95 N. Y. 329; *Matter of Rudolph*, 97 Misc. 548.) VI. Considering the testimony and proof in the instant case, the presumptions applying in the Surrogate's Court establish publication of the propounded instrument. (*Matter of Carll*, 38 Misc. 471; *Matter of Bassett*, 84 Misc. 656; *Matter of Van Benschoten*, 105 Misc. 332; *Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422; *Matter of Voorhis*, 125 N. Y. 765.) VII. The use of the expression " unequivocal declaration " in the cases cited by the Surrogate and appellants is not a description properly applicable to probate proceedings. (*Shugart* v. *Halliday*, 2 Ill. App. 45; *Lewis* v. *Lewis*, 11 N. Y. 220; *Ex Parte Beers*, 2 Bradf. 163; *Wilson* v. *Hetterick*, 2 Bradf. 427; *Matter of Katz*, 277 N. Y. 470; *Remsen* v. *Brinckerhoff*, 26 Wend. 325.)

*Edward B. Schulkind* and *Irving M. Maron* for Helen Marcin, respondent. I. It is sufficient to constitute publication if testator indicates by some " way or mode " to the witnesses that he understands that he executed a will, and any communication to this effect is sufficient. (*Remsen* v. *Brinckerhoff*, 26 Wend. 325; *Lane* v. *Lane*, 95 N. Y. 494.) II. Such communica-

tion may be direct or inferred from the circumstances. (*Lewis v. Lewis,* 11 N. Y. 220; *Matter of Cottrell,* 95 N. Y. 329.) III. In case of a holographic will the evidence as to publication need not be as clear as in the case where the will is drawn by a third person. (*Matter of Beckett,* 103 N. Y. 167; *Matter of Eldred,* 109 App. Div. 777.) IV. Due publication of a will may be established even in direct opposition to the testimony of both witnesses. (*Matter of Cottrell,* 95 N. Y. 329; *Matter of Hohn,* 180 Misc. 384.) V. Where an appeal from a Surrogate's Court decree is taken upon the facts, the Appellate Division is not solely a court of review, but has the same power to decide questions of fact that the Surrogate had. (*Matter of Friedlander,* 189 App. Div. 90.)

Fuld, J. The courts below have disagreed on whether decedent, Robert Pulvermacher, published his holographic will in compliance with the statutory mandate that a testator '' declare the instrument * * * subscribed, to be his last will and testament '' at the time that he signs or acknowledges it (Decedent Estate Law, § 21, subd. 3).

In January of 1949, Pulvermacher, while in the safe-deposit vault of his bank, obtained a piece of paper from one of the guards. Soon thereafter, he emerged from a booth near the vault and requested the guard and another vault attendant to '' witness my signature.'' Although familiar with his signature, the guard, as was his wont in the case of all papers, asked him to sign again, and the two witnesses then signed to the right of his second signature.

Only those witnesses and Pulvermacher were present, and both employees emphatically testified, not only that the latter did not say that the paper was a will, but that they did not know that they were witnessing a testamentary disposition. According to one of them, all that Pulvermacher told them was, '' I am going away on a trip. I have some instructions that I want carried out if anything happens ''; and the other witness recalled that, after mentioning a '' trip '', Pulvermacher merely stated that there was '' something I want to take care of in case something happens to me '', and that '' with all the accidents which you have today you never know what will happen.'' At the time of signing, the paper was folded and held in such a way

that, at most, only the bottom quarter was visible. Both witnesses insisted that they read no part of it, though, even if they had, they could not have seen any attestation clause — for there was none. The words exposed were these: " The Business of L Pulvermacher & Bros has to be continued is wish of deceased otherwise in the event they cannot get along together to dissolve the Business & divide  Robert Pulvermacher 308 E 79th St Jan 14 — 1949 ".

Some three years later, Pulvermacher died. We may assume that he intended the writing as his will, but our statute requires more. It requires definite formalities, and one of them is publication (Decedent Estate Law, § 21, subd. 3). Publication, in turn, demands, not only that the testator have knowledge of the character of the instrument, but, equally important, that he share that knowledge with his witnesses. While " no particular form of words " is necessary, the courts have held the minimum statutory prescription to be some kind of communication that the instrument, which they are being asked to sign, is testamentary in character. (See, e.g., *Matter of Turell,* 166 N. Y. 330, 337; see, also, *Matter of Moore,* 109 App. Div. 762, 765, affd. 187 N. Y. 573; *Lewis* v. *Lewis,* 11 N. Y. 220, 224-225; *Van Hooser* v. *Van Hooser,* 1 Redf. 365, 373; *Darnell* v. *Buzby,* 50 N. J. Eq. 725, 730-732.) " It must appear that, as between the testator and the witnesses, there was some meeting of the minds upon the understanding that the instrument was the testator's will ". (*Matter of Turell, supra,* 166 N. Y. 330, 337.) And that understanding must be derived, one court has written, " *from some unequivocal act or saying of the testator* ". (*Van Hooser* v. *Van Hooser, supra,* 1 Redf. 365, 373; italics in original.)

The reason for requiring publication is twofold: first, to furnish proof that the testator is under no misapprehension, whether by malicious contrivance or otherwise, as to the nature or identity of the instrument, and second, to impress upon the witnesses the fact that, since the document is a will, they are expected " to remember what occurred at its execution and be ready to vouch for its validity in court." (*Matter of Moore, supra,* 109 App. Div. 762, 765, affd. 187 N. Y. 573; see, also, 1 Davids on New York Law of Wills [1923], § 307, p. 517.)

Because the possibility of misapprehension on the part of the testator is greatly reduced where a holographic will is involved, we have demanded " less strictness in the proof of a compliance with statutory formalities." (*Matter of Turell, supra,* 166 N. Y. 330, 337.) However, while proof of publication " may be relaxed somewhat ", compliance there must still be. (*Matter of Moore, supra,* 109 App. Div. 762, 765, affd. 187 N. Y. 573; see, also, *Matter of Hunt,* 110 N. Y. 278, 281; *Matter of Beckett,* 103 N. Y. 167, 174.) A holographic will, this court has remarked, " must be executed with the same formalities as any other. Such is the command of the Legislature. To admit to probate such an instrument * * * [without proof of the formalities] opens the door to the nullification of statutory provision and probably in some cases to fraud." (*Matter of Allen,* 282 N. Y. 492, 497.)

We find no warrant to ignore that legislative command in the fact that this state at other times did not — and that many other jurisdictions do not today — number publication as one of the solemnities prerequisite to the due execution of a will. (See, e.g., *Remsen* v. *Brinckerhoff,* 26 Wend. 325, 330–331, 337; 1 Roberts on Wills and Codicils [1st Amer. ed., 1823], pp. 105–108; 1 Davids, *op. cit.,* § 306, pp. 514–515; 1 Page on Wills [3d ed., 1941], § 379, pp. 687–688.) The legislature, cognizant of our unbroken line of decisions requiring compliance with each of the statutory formalities even in the case of holographic wills, has continued its requirements unchanged and unrelaxed. (Compare 2 Rev. Stat. of N. Y. [as published under direction of Revisers, 1829], part II, ch. VI, tit. I, § 40, subd. 3, p. 63, with Decedent Estate Law, § 21, subd. 3; see 2 Rev. Stat. of N. Y. [as prepared by Commissioners, 1875], note to proposed § 7, amdg. § 40 of Rev. Stat., p. 1613; cf. Decedent Estate Law, § 16.)

In the case before us, the testimony, clear and uncontradicted, reveals that the witnesses were not informed, and, indeed, did not believe, that the paper was a will. Pulvermacher's remarks that he was going on a " trip " and that he was leaving " instructions " which he wanted carried out in case " anything happens," were at best equivocal. They " did not necessarily inform the witnesses that it was a will by excluding every other instrument from the mind." (*Lewis* v. *Lewis, supra,* 11 N. Y. 220, 227.) The witnesses could just as readily have inferred that

Pulvermacher was signing a power of attorney or an assignment or that he was providing for an *inter vivos* gift. And the reference to " accident ", to anything that might happen, might just as well have pertained to nonfatal accidents or to mere delay in returning as to death. (Cf., e.g., *Matter of Harris,* 1 Tuck. 293, 298.)

Neither the relationship of the bank attendants to Pulvermacher nor the surrounding circumstances were sufficient to bring home to those witnesses that the writing was a will. (Cf. *Matter of Beckett, supra,* 103 N. Y. 167, 174–176.) The fact that a portion was visible does not indicate that Pulvermacher intended his witnesses to read it and realize its testamentary character. Indeed, the paper was folded and held so as to expose only a small part of the writing. In the light of this effort to conceal and secrete the paper's contents, as well as the relationship of the parties, it might well have been presumptuous of them to have read it. If any inference is to be drawn from the way in which the document was presented and from the lack of an attestation clause, it was that Pulvermacher actually sought to keep its nature from his witnesses. There is no need to find motive for such concealment; testators are, it has been said, " prone to desire to enshroud their testamentary acts in devious ways." (2 Jessup-Redfield, Surrogates' Law and Practice [Rev. ed., 1947], § 682, p. 48.)

Unable to contradict the testimony of the two witnesses, proponents seek to controvert it by suggesting that they lied. Those witnesses deny that they knew this was a will, the argument goes, in order to avoid the disfavor of their employer, whose rules prohibited two vault attendants from witnessing the same will. Even were we willing to accept this reasoning — and we are not — proponents have offered no evidence that the will was published. An attack on the credibility of the only witnesses in the case cannot fill the gap in their proof (see *Matter of Moore, supra,* 109 App. Div. 762, 768–769, affd. 187 N. Y. 573; *Matter of Dale,* 56 Hun 169, 174–175, affd. 134 N. Y. 614; *Woolley* v. *Woolley,* 95 N. Y. 231, 236), a gap which, according to the legislature's mandate, is fatal to probate. If the result appears to be harsh in this or that case, we must bear in mind that such consequence is compelled by legislative pronouncement, a rule

built on what undoubtedly impressed our lawmakers as sound policy. (See *Matter of Andrews,* 162 N. Y. 1, 5; *Lewis* v. *Lewis, supra,* 11 N. Y. 220, 227–228.)

The decree entered pursuant to the order of the Appellate Division should be reversed and the original decree of the Surrogate's Court affirmed, with costs to appellants in this court and in the Appellate Division, payable out of the estate.

LEWIS, Ch. J., CONWAY, DESMOND and DYE, JJ., concur with FULD, J.; FROESSEL, J., dissents and votes to affirm on the prevailing opinion of the Appellate Division.

Ordered accordingly. [See 305 N. Y. 923.]