### HOEY et al. v. HOEY.

(Supreme Court, Appellate Division. First Department. July 17, 1900.)

1. DEED—MENTAL CAPACITY OF VENDOR—EVIDENCE—SUFFICIENCY.

H., an eccentric comic actor, continued his profession for more than a year after execution of a deed to his wife, and during that time no change indicating his insanity was manifested. When the deed was sent to him for execution, he made corrections therein, and afterwards told several

friends of the conveyance. A witness in whose institution H. had been treated testified that there, was nothing to indicate his insanity. An expert witness, in answer to a hypothetical question based on the acts of H., said that they indicated that he was suffering from the incipient stage of paresis, but refused to say that such condition would incapacitate him for transacting business. *Held* not sufficient to show such mental incapacity on the part of H. as to justify a decree setting aside the deed.

2. WITNESS—CROSS-EXAMINATION.

Where, in an action to set aside a deed on the ground of the insanity of the grantor, the physician who attended him in his last illness testified that deceased died of paretic dementia, defendant was entitled, on cross-examination, to ask the witness how long that condition continued, to his knowledge, and to show that long after the execution of the deed witness saw deceased, and that at that time there was no indication of any mental disease.

Appeal from special term, New York county.

Action by Bridget Hoey and others against Helena G. Hoey to set aside a deed executed to defendant by William Hoey, her husband, on the ground of insanity of the grantor. From a judgment dismissing the complaint (59 N. Y. Supp. 946), plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Thomas J. O'Neill, for appellants.

A. H. Hummel, for respondent.

INGRAHAM, J. This action was brought to set aside a deed made in February, 1896, by William Hoey, by which he conveyed to his wife, the defendant in this action, certain real estate in the city of New York. The deed in question was executed on the 7th of February, 1896, in the city of Chicago, Ill., where the deceased was acting; the defendant at that time being in the city of New York. The consideration is one dollar and other good and lawful consideration, and the property conveyed consists of two pieces of property in the city of New York. The plaintiffs are the heirs at law of the deceased, who died intestate. The complaint alleges that at the time the deed was executed the deceased was of unsound mind, memory, and understanding, and did not sign or execute said deed, and that, if the same was signed by him, he did not understand or know that he was executing or signing a deed of said premises, and that he did not intend to sign or execute a deed of said premises to the defendant. Upon the trial considerable testimony was taken which it is claimed tended to show that the execution of the deed was procured by undue influence, and the learned trial judge in deciding the case considered both these grounds of attack, and determined that the evidence did not justify a finding that the grantor was of unsound mind, or that the execution of the deed was procured by undue influence. The decedent lived after the execution of this deed, which was in February, 1896, until June 29, 1897. He was a comic actor, had been on the stage many years, and continued acting down to a very short time before his death. There was considerable evidence introduced by the plaintiffs which tended to show erratic acts during the last few years of his life, and, while these were more

pronounced during last year than formerly, he appears to have been a man addicted to practical jokes, and always endeavoring to attract attention by his oddities and eccentricities. It was also proved that in March, 1896, he went to an institution kept by a man named Muldoon; that at that time he was suffering from the effect of a prolonged period of intoxication. He stayed in the institution for a month, but as soon as he had recovered from the effect of the intoxication he seemed to have been restored to his normal condition. Muldoon was examined as a witness, and stated that he had treated people suffering from paresis, at his institution, and that nothing that he saw about the deceased there would indicate that he had that disease. It was further proved that his death was caused by paretic dementia, and the physician who attended him for a period of about two months before his death testified that when he saw him, about two months before he died, he had sciatica; that at that time he had several interviews with the decedent, treated him for ten days, and had long conversations with him, and that nothing happened that led him to believe that there was any mental derangement; no indication of paresis at that time. A specialist in mental diseases was also called, and testified as to the first symptoms of the disease; that these symptoms proceed for a certain length of time, and that then there is a gradual failure of mental powers; that this progresses until there is complete obliteration of the mind and death; that among the physical peculiarities is progressive weakness; that the disease generally lasts about three years; that it is a gradual fading away of the faculties, physically and mentally, and that the dementia is usually seen about a year or a year and a half before death; that, after dementia commences, persons suffering from the disease usually have insufficient mental capacity to execute instruments conveying property or to carry on business transactions; that this stage of dementia continues for different periods in different individuals; and that it is impossible to fix any rule. He was then asked a hypothetical question, assuming the acts of the decedent which had been proved, to which he testified that they would indicate that the deceased was suffering from the incipient stage of paresis; but the witness refused to say that it would disclose at that time a condition of mind that would not permit him to perform actual business, such as a transfer of property, and it would not necessarily follow that he would be incompetent to execute a deed. The testimony introduced on behalf of the defendant explained these eccentric actions of the deceased, and the circumstances under which the deed was executed were detailed. The deceased was in Chicago. The deed had been sent to him, but it incorrectly described his residence as being there. This he caused to be corrected. He informed several of his friends that he had made the conveyance. He then continued in his profession for over a year, without any evidence of a change in his mental condition.

The relation of the grantor to the grantee is of considerable importance in this case. The deceased had no children, and voluntarily conveyed his real estate to his wife. There is certainly nothing peculiar in the fact that a person under the circumstances shown here

should make a proper provision for his wife, and the amount of this property was not in excess of what was necessary for her support. The fact that he preferred that his wife should have this property, rather than his other relatives, is not of itself an indication of mental incapacity or undue influence. It may be that the deceased was suffering from the incipient stages of paresis at the time he executed the deed, but there is nothing to show that at that time the disease had progressed to such an extent as to seriously impair his mental faculties, or prevent him from intelligently disposing of his property. A person seeking to set aside a conveyance has the burden of showing that, at the time the act sought to be avoided was executed, the disease had reached such a stage as to so seriously impair the mind that the capacity to make a valid disposition of property did not exist. The law recognizes that persons suffering from mental disease may make valid contracts or deeds or wills. If, at the time of the execution of the instrument sought to be avoided, the mental condition was such that the act was the intelligent act of the individual, based upon his intelligent and rational judgment, with sufficient mental power to understand the nature of his property and his relations to those who would be the subjects of his bounty, and without prompting to arrive at a determination as to what disposition he wished to make of it, the court is not justified in declaring such disposition invalid. Much more is required than merely to show that the grantor or testator was suffering from a mental disease. There must be satisfactory evidence that the disease had progressed to such an extent that his capacity to contract was impaired. In Re Lawrence, 48 App. Div. 83, 62 N. Y. Supp. 673, we stated the rule to be that:

"The question is not whether the testator at the time of the execution of this will was suffering from disease from which he became insane in October, but whether at the date of the execution of the will the disease had so far progressed that he had not sufficient memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to perform some rational judgment in relation to them, and whether he did intelligently determine to make the testamentary disposition in question, and execute that intention."

A consideration of this testimony shows, we think, that the deceased at the time of the execution of this instrument had sufficient capacity to execute this deed, that he intelligently and of his own volition carried out that intention, and that the court below would not have been justified in declaring it void.

There are several objections to rulings upon testimony urged by the appellant, but we think none of them are of sufficient merit to justify discussion. The cross-examination of Dr. Chapman, a physician produced by the plaintiff, was clearly competent. The witness was asked whether he attended the decedent at the time of his death, and he answered in the affirmative, and was then asked the cause of his death, to which he answered, "Paretic dementia." Upon cross-examination the defendant was clearly entitled to ascertain how long that disease had continued, to the knowledge of the physician, and to show that long after the deed was executed the witness saw the

deceased, and that at that time there was no indication of a mental disease. But, even assuming that there was error in rulings upon evidence, no evidence that could have aided the plaintiff was excluded; and upon her evidence we are satisfied that the court would not have been justified in setting aside this conveyance.

The judgment should be affirmed, with costs. All concur.