(153 App. Div. 147.)

MORITZ et al. v. MORITZ.

(Supreme Court, Appellate Division, First Department. November 15, 1912.)

1. DEEDS (§ 211*)—CAPACITY OF GRANTOR—EVIDENCE.

Evidence in an action to set aside a deed to the grantor's wife, on the ground of his incapacity at the time he executed it, *held* to show that he was of unsound mind and obsessed by delusions that he would be reduced to poverty and that his sons would be unable to take care of themselves, but not to show that he was then so affected as to render him absolutely incapable of understanding the nature of the transaction.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647, 649; Dec. Dig. § 211.*]

2. APPEAL AND ERROR (§ 931*)—INCONSISTENT FINDINGS—PARTY ENTITLED TO BENEFIT.

A grantee, appealing from a judgment setting aside the deed because of the grantor's incapacity to execute it, has the benefit of any inconsistency between findings that the grantor was of unsound mind and obsessed by delusions, but that he was not so affected as to render him absolutely incompetent to understand the nature of the transaction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. § 931.*]

3. DEEDS (§ 196*)—VALIDITY—CAPACITY OF GRANTOR.

Where a grantor who executes a deed to his wife is of sound mind, except as to delusions that he would be reduced to poverty and that his sons would be unable to take care of themselves, one seeking to set aside the deed must show that he was led to execute it because of such delusions, or, in other words, that there was a clearly traceable connection between the delusions and the making of the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593; Dec. Dig. § 196.*]

4. DEEDS (§ 211*)—ACTION—WEIGHT OF EVIDENCE—CAPACITY OF GRANTOR.

Evidence in an action to set aside the deed of a grantor, who, at the time of executing the deed to his wife was subject to insane delusions, *held* not to show any connection between such delusions and the execution of the deed, or that such delusions induced the grantor to do an act which he could not understand.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647, 649; Dec. Dig. § 211.*]

Miller and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MIL-LER, and DOWLING, JJ.

Charles A. Decker, of New York City, for appellant.
John P. Mitchell, of New York City, for respondents.

SCOTT, J. This is an action to set aside a deed executed by Herman H. Moritz, deceased, to his wife, the defendant, on November 22, 1909, upon the ground that at the time of its making said Moritz

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

was mentally incapable of executing a valid deed. From a judgment in favor of plaintiffs, defendant appeals.

Unlike most cases involving the imputation of insanity, there is little doubt that the grantor was, when the deed was made, of unsound mind and subject to obsessions or delusions on certain subjects; the question being whether or not that unsoundness and these obsessions or delusions were such as to make him incapable of executing a valid deed to his wife. Herman H. Moritz was, at the time he made the conveyance complained of, about 49 years of age. He was not a lawyer, but had been employed for some time in a lawyer's office in connection with the real estate business of the firm. Except this, he does not appear to have been engaged in any business, except dealing in real estate. He was worth about $50,000, and apparently at some time had been worth considerably more. A short time prior to the events about to be referred to he had lost, by his own obstinacy, an opportunity to make a real estate investment, which, as the event proved, would have realized a considerable profit. The defendant was his second wife; their marriage having taken place April 6, 1907. He had two sons by the first wife; the elder being rather backward mentally, and subject to severe attacks of rheumatism. The younger was apparently a bright boy of average intelligence. Each of these sons would be entitled to receive from their mother's estate a sum sufficient to provide them with a comfortable maintenance. The relations between Moritz and his second wife were apparently of the most cordial character, and whenever he spoke of her it was in terms of respect and affection.

In July or August of 1909 Moritz began to display symptoms of that form of insanity denominated by the expert witness as melancholia. He brooded over his losses, and especially over his loss of the opportunity to make a profitable investment. He began to express apprehension as to the future of his sons, much exaggerating the mental and physical defects of the elder, and even attributing similar defects to the younger. He became obsessed with the idea that he and his family would be reduced to poverty, and that his sons would be unable to take care of themselves. At times he expressed the idea that the best thing he could do would be to kill himself and his sons. and ultimately, on March 13, 1910, he carried this idea into execution, and, after killing his two sons, committed suicide.

[1] Upon these facts the court has found, and the evidence I think justifies the finding, that during the period referred to the deceased was of unsound mind and obsessed by the delusions to which I have referred. It has not found, however, and the evidence would not justify a finding, that during this period, and at the time he made the conveyance to his wife, Moritz was "so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction." Aldrich v. Bailey, 132 N. Y. 85–89, 30 N. E. 264, 265. On the contrary, the expert called by plaintiffs (the only expert witness in the case) expressed the opinion that Moritz had not lost all power of reasoning, but where his delusions came in his reasoning would be warped and his judgment would be weakened;

but he had not lost the power of reasoning, and he could reason intelligently in many cases that were not connected with his delusions. He further said:

"If a man firmly believed that he was going to kill himself, I would not say that it would be any evidence of delusion if he gave his property to his wife; and if a man should determine to kill himself and his two children, it would not necessarily be any evidence of a delusion if he gave his property to his wife. * * * It may have been a perfectly natural thing for him to do."

[2] That the man was sane and intelligent upon every subject not related to his obsessions or illusions appears abundantly. Indeed, the court has found that at and about the time of and previous to the conveyance to his wife, Moritz sought and received independent advice concerning the transfer; that at the time of the conveyance Moritz was able to manage his property and was capable of understanding business affairs. In so far as these findings may be inconsistent with other findings, appellant is entitled to the benefit of the most favorable.

[3] If, then, as clearly appears to be the case, Moritz was of sound mind, except as to the particular obsessions or delusions which have been referred to, it becomes necessary to show, in order to invalidate his deed, that he was led to make it because of his delusions; in other words, that there is a clearly traceable connection between the obsessions and the act of making the deed. In Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302, it is said:

"A man may even have an insane delusion, and yet be able to make a valid will; for the will, to be invalid, must be the result itself of the delusion, and it is not a delusion which incapacitates, if the proof of its existence depends upon external and observable facts, giving rise to impressions which, upon investigation, might be proved to be unjust. In the Matter of White's Will, 121 N. Y. 406, 24 N. E. 935, * * * it was observed that 'delusion is insanity, where one persistently believes supposed facts, which have no real existence, except in his perverted imagination, and against all evidence and probability, and conducts himself, however logically, upon the assumption of their existence.' * * * But, if there are facts, however insufficient they may in reality be, from which a prejudiced, or a narrow, or a bigoted mind might derive a particular idea or belief, it cannot be said that the mind is diseased in that respect. The belief may be illogical, or preposterous; but it is not, therefore, evidence of insanity in the person."

In Davren v. White, 42 N. J. Eq. 569, 7 Atl. 682, in an action to set aside a deed voluntarily given by a mother, who was old and paralytic, to her daughter the court said:

"There is evidence tending to show want of capacity. The test in the class of cases to which this belongs is: Did the person whose act is brought in judgment possess sufficient ability at the time he did the act to understand, in a reasonable manner, the nature and effect of his act or the business he was transacting? If he did, his act is valid. He may have been old, or enfeebled by disease, or irrational upon some subjects, yet if he had sufficient ability to comprehend, in a reasonable manner, what he was doing, his act will bind him."

In Hoey v. Hoey, 53 App. Div. 210, 65 N. Y. Supp. 780, which was an action to set aside a deed from a husband to his wife, and it appeared that the grantor suffered from a progressive form of insanity,

the court used language which is especially pertinent to this case.    It said:

"There is certainly nothing peculiar in the fact that a person under the circumstances shown here should make a proper provision for his wife, and the amount of this property was not in excess of what was necessary for her support.    The fact that he preferred that his wife should have this property, rather than his other relatives, is not of itself an indication of mental incapacity or undue influence.    It may be that the deceased was suffering from the incipient stages of paresis at the time he executed the deed; but there is nothing to show that at that time the disease had progressed to such an extent as to seriously impair his mental faculties, or prevent him from intelligently disposing of his property.    A person seeking to set aside a conveyance has the burden of showing that, at the time the act sought to be avoided was executed, the disease had reached such a stage as to so seriously impair the mind that the capacity to make a valid disposition of property did not exist.    The law recognizes that persons suffering from mental disease may make valid contracts or deeds or wills.    If, at the time of the execution of the instrument sought to be avoided, the mental condition was such that the act was the intelligent act of the individual, based upon his intelligent and rational judgment, with sufficient mental power to understand the nature of his property and his relations to those who would be the subjects of his bounty, and without prompting to arrive at a determination as to what disposition he wished to make of it, the court is not justified in declaring such disposition invalid.    Much more is required than merely to show that the grantor or testator was suffering from a mental disease.    There must be satisfactory evidence that the disease had progressed to such an extent that his capacity to contract was impaired.    In re Lawrence, 48 App. Div. 83, 62 N. Y. Supp. 673, we stated the rule to be that: 'The question is not whether the testator at the time of the execution of this will was suffering from disease from which he became insane in October, but whether at the date of the execution of the will the disease had so far progressed that he had not sufficient memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them, and whether he did intelligently determine to make the testamentary disposition in question, and execute that intention.'    A consideration of this testimony shows, we think, that the deceased, at the time of the execution of this instrument, had sufficient capacity to execute this deed, that he intelligently and of his volition carried out that intention, and that the court below would not have been justified in declaring it void."

[4] It would serve no useful purpose to quote further from adjudicated cases.   Enough has been done to show that more is required than mere proof of insanity upon certain subjects to justify the invalidation of a deed.    There must be some such connection between the insane delusions and the making of the deed as will compel the inference that the insanity induced the grantor to perform an act the purport and effect of which he could not understand, and which he would not have performed if thoroughly sane.    I can find no evidence to support such a conclusion, and the findings of the trial court to that effect are, as I consider, unsupported by any evidence.    The claim now made by respondent that, even if the deed was not void for the grantor's insanity, still that it should be declared invalid, because it must be presumed to have been made as the result of undue influence exercised upon him by his wife, finds no support in the evidence or in the findings of the trial court.    It need not, therefore, be seriously considered.

For these reasons, I am of opinion that the judgment should be reversed, and the complaint dismissed, with costs to appellant in this court and in the court below.

INGRAHAM, P. J., and CLARKE, J., concur. MILLER and DOWLING, JJ., dissent.

(153 App. Div. 153.)

MORITZ et al. v. MORITZ.

(Supreme Court, Appellate Division, First Department. November 15, 1912.)

Appeal from Special Term, New York County.
Action by George F. Moritz and others against Anna V. Moritz. From a judgment entered upon a decision after a trial at Special Term, defendant appeals. Reversed, and complaint dismissed.
Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Charles A. Decker, of New York City, for appellant.
John P. Mitchell, of New York City, for respondents.

