■ In the Matter of the Estate of EPHREM J. PILON, Deceased. RICHARD PILON, Respondent; DOUGLAS PILON, Appellant. [780 NYS2d 810]—

Cardona, P.J. Appeal from an order of the Surrogate's Court of Clinton County (Ryan, S.), entered April 21, 2003, which admitted to probate an instrument purporting to be the last will and testament of decedent.

At issue in this probate proceeding is the validity of decedent's last will and testament, executed in July 1998, which bequeathed his entire estate to petitioner, his grandson. As in previous wills executed by decedent, this will specifically stated that no provision was being made for respondent, decedent's only child, and certain of his grandchildren, "by reason of their . . . treatment of [him]." However, for the first time, the instant will also made no provision for the remaining grandchildren, other than petitioner, "by reason of their total lack of concern for [his] well being." Respondent objected to probate of this will, contending that it was improperly executed and the product of undue influ-

ence* and an insane delusion. Following a hearing, Surrogate's Court rejected those claims and admitted the will to probate, resulting in this appeal.

We are unpersuaded by respondent's claim that the will execution ceremony failed to comply with the publication requirements of EPTL 3-2.1 (a) (3). A will is presumed to have been properly executed where, as here, the execution was supervised by the attorney who drafted the will (*see Matter of Leach*, 3 AD3d 763, 764 [2004]). Notably, a presumption of due execution also arises here since the will was accompanied by a self-executing affidavit of the attesting witnesses (*see id.* at 764-765; *Matter of Clapper*, 279 AD2d 730, 731 [2001]). In order to rebut this presumption, there must be positive proof that the formal requirements of execution were not met (*see Matter of Turell*, 166 NY 330, 337-338 [1901]; *Matter of Ruso*, 212 AD2d 846, 847 [1995]). In this case, there was no affirmative proof that decedent did not publish his intention, *in some manner*, that the document was his will (*cf. Matter of Pirozzi*, 238 AD2d 833, 834 [1997]).

The proof herein shows that attorney Robert Wylie drafted the will which was then typed by one of his secretaries, Julie Collins or Angeline Cassidy. Collins indicated that she had typed other wills and acted as a witness. On this occasion, Wylie and decedent reviewed the will prior to its execution. Wylie asked both secretaries to come into the room to witness the will. Collins testified that decedent executed the will in her and Cassidy's presence and each witnessed it in the presence of the other. Although Wylie, Collins and Cassidy did not testify to any specific discussions between decedent and the witnesses during the execution ceremony, that does not establish that the requirements of execution, including the publication requirement, were not sufficiently met (*see Matter of Leach, supra* at 764; *Matter of Ruso, supra* at 847). "[S]ubstantial compliance will be sufficient and no particular form of words is required, or is necessary, to effect publication" (*Matter of Turell, supra* at 337). There need only be some "meeting of the minds between the testator and the attesting witnesses that the instrument they were being asked to sign as witnesses was testamentary in character" (*Matter of Roberts*, 215 AD2d 666, 666 [1995]; *see Matter of Pulvermacher*, 305 NY 378, 383 [1953]; *Matter of Turell, supra* at 337) and a request to have the witnesses sign the will can be inferred from the circumstances surrounding the entire execution (*see*

---

* As respondent has not addressed the undue influence claim in his brief, we deem that claim abandoned (*see Rodrigues v N & S Bldg. Contrs.*, 8 AD3d 876, 877 n 1 [2004]).

*Matter of Buckten*, 178 AD2d 981, 981-982 [1991], *lv denied* 80 NY2d 752 [1992]). Here, "the surrounding circumstances were sufficient to bring home to [Collins and Cassidy] that the writing was a will" (*Matter of Pulvermacher, supra* at 385) and that they were being asked to sign it as witnesses. Therefore, we cannot say that the evidence demonstrated the absence of substantial compliance with the minimum statutory prescription for execution of the will.

We now turn to the claim that decedent suffered from an insane delusion that four of his grandchildren did not care about him which affected his decision to disinherit them. Insane delusion is characterized by a "persistent[ ] [belief in] supposed facts, which have no real existence" coupled with conduct taken upon the "assumption of their existence" (*American Seamen's Friend Socy. v Hopper*, 33 NY 619, 624-625 [1865]; *see Matter of Honigman*, 8 NY2d 244, 250 [1960]). Notably, a delusion does not "incapacitate[ ] if the proof of its existence depends upon external and observable facts, giving rise to impressions which, upon investigation, might be proved to be unjust" (*Dobie v Armstrong*, 160 NY 584, 593 [1899]). "[T]he belief must be utterly preposterous and unfounded . . . [and it] may be illogical or absurd, but it is not an insane delusion if there was the slightest basis for the testator's belief" (PJI2d 7:49 [2003]).

In the record before us, there was evidence, albeit scant, that the relationships between decedent and four of his grandchildren had all undergone change by the time of the execution of the will in July 1998. It appears from the proof that they visited decedent infrequently or not at all. We find such evidence to be sufficient to provide a basis to sustain decedent's belief, even if erroneous, that they exhibited a lack of concern for decedent's well-being. Therefore, respondent failed to meet his burden of proving that decedent was suffering from an insane delusion when he executed his will. Accordingly, we conclude that the will was properly admitted to probate.

Peters, Spain, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, without costs.