Spain, J.E
Appeal from an order of the Surrogate’s Court of
Albany County (Doyle, S.), entered November 9, 2007, which granted petitioner’s motion for summary judgment dismissing respondent Kerry A. Corrigan’s objections to decedent’s will.
At issue in this probate proceeding is the validity of decedent’s last will and testament, executed in December 1999. In previous wills, decedent bequeathed her estate in equal shares to her daughters— petitioner and respondent Kerry A. Corrigan (hereinafter respondent)—and her only son, John Turner. In the most recent will, decedent distributed her assets to her son, petitioner, petitioner’s daughter, and petitioner’s granddaughter, making no provision for respondent or respondent’s issue. After decedent’s death in 2002, petitioner sought to admit the will to probate and respondent objected. Eetitioner moved for, and obtained, summary judgment. Respondent now appeals.
We affirm. Respondent does not challenge decedent’s capacity, in general, to make a will, but asserts that the will was the product of an insane delusion or petitioner’s undue influence. To set forth a prima facie case to invalidate the will based on *864 insane delusion, it was incumbent upon respondent to establish that decedent exhibited a “persistente ] [belief in] supposed facts, which have no real existence coupled with conduct taken upon the assumption of their existence” (Matter of Pilon, 9 AD3d 771, 773 [2004] [internal quotation marks omitted]; see Matter of Honigman, 8 NY2d 244, 250 [I960]). Notably, the belief “ ‘may be illogical or absurd, but it is not an insane delusion if there was the slightest basis for the testator’s belief ” (Matter of Pilon, 9 AD3d at 773, quoting PJI 7:49 [2003]).
Here, the basis of respondent’s insane delusion claim is that decedent believed that respondent was stealing from her. When decedent’s husband died in 1998, his will created a credit shelter trust of which decedent was the sole beneficiary and respondent was trustee. As trustee, respondent was instructed to pay decedent “so much of the net income as [respondent] shall deem advisable,” as well as discretionary payments from principal in order to maintain decedent’s standard of living. Prior to her execution of the new will, decedent received all the income from the trust, but respondent declined to invade the principal as she believed her mother had sufficient other resources. Decedent apparently did not fully appreciate the benefits of creating the trust and frequently expressed dissatisfaction with the loss of control over her late husband’s assets and with respondent’s administration of the trust. Although respondent testified that she endeavored to explain the trust to decedent, decedent persistently demanded greater access to the money and, as a result, the relationship between respondent and decedent deteriorated.
In January 1999, decedent called a family meeting at her home with her children, ostensibly to address the trust and her difficulties with respondent. According to respondent, decedent demanded to know where her money was and how much there was. When respondent answered that the money was in trust and decedent would get it as she needed it, decedent accused her of lying and lunged at her across the room. When petitioner then said that respondent was stealing petitioner’s money, respondent left. Following this meeting, decedent no longer allowed respondent into her home or took telephone calls from her. However, she continued to have lunch with respondent once a week at the hospital where respondent worked and decedent volunteered, where mother and daughter interacted socially in a positive manner, but did not discuss finances.
Even crediting respondent’s version of events as true—as we must in considering petitioner’s motion for summary judgment (see Finch v County of Saratoga, 305 AD2d 771, 771 [2003])— *865 we agree with Surrogate’s Court that respondent has alleged insufficient evidence to make a prima facie case of incapacity by insane delusion. The only evidence proffered that decedent ever—much less persistently—accused respondent of stealing is the deposition testimony of her former attorney who stated that decedent was confused by the trust and “believed that [respondent] had taken her money.” Respondent testified only that petitioner accused her of stealing in front of decedent, but not that decedent ever expressed that belief. Although this evidence could establish that decedent had developed an unfounded distrust in respondent and that she did not understand the nature of a trust, misunderstandings and unjust opinions— standing alone—are insufficient to establish insane delusion. Indeed, “if there are facts, however insufficient they may in reality be, from which a prejudiced, or a narrow, or a bigoted mind might derive a particular idea, or belief, it cannot be said that the mind is diseased in that respect. The belief may be illogical, or preposterous, but it is not, therefore, evidence of insanity in the person” (Moritz v Moritz, 153 App Div 147, 150 [1912], affd, 211 NY 580 [1914] [citations and internal quotation marks omitted]). Here, the apparently unfounded perception by decedent that respondent was mishandling—or even misappropriating—her money, even though persistent and contrary to the record evidence that respondent was not guilty of any misconduct, could readily have stemmed from decedent’s frustration over the loss of control of the assets, rather than some form of insanity. Indeed, we cannot say that decedent’s failing opinion of respondent, even if illogical and unfair, is so devoid of reason to establish a basis upon which a finding could be made that decedent suffered from an insane delusion (see Matter of Pilon, 9 AD3d at 773; cf. Matter of Honigman, 8 NY2d at 250-251; Zielinski v Moczulski, 208 AD2d 275, 277-278 [1995], lv dismissed 86 NY2d 861 [1995], op vacated on rearg 87 NY2d 944 [1996]; Matter of Etoll, 30 AD2d 224, 228-229 [1968]).
Likewise, we agree that respondent did not proffer sufficient evidence which could establish that decedent’s will was the product of petitioner’s undue influence. “To prove undue influence, a respondent must demonstrate that the decedent ‘was actually constrained to act against [his or her] own free will and desire by identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred’ ” (Matter of Colverd, 52 AD3d 971, 973 [2008], quoting Matter of Murray, 49 AD3d 1003, 1005-1006 [2008]; see Matter of Malone, 46 AD3d 975, 977 [2007]). “Absent specificity as to times, dates and places, ‘[c]onclusory allegations and speculation’ are insufficient to raise an issue of fact as to acts of undue *866 influence or fraud” (Matter of Colverd, 52 AD3d at 973, quoting Matter of Young, 289 AD2d 725, 727 [2001]; see Matter of Fellows, 16 AD3d 995, 996 [2005]).
Here, respondent’s allegations, if credited, could establish that petitioner had motive and opportunity to influence decedent’s testamentary decisions, but these allegations fail to demonstrate that any undue influence was actually asserted. By all accounts, decedent was exceptionally independent up to and until the time she made her last will. She lived alone, drove her own automobile, was involved in her church, and continued to do volunteer work. She directly addressed her wishes to her new attorney with respect to her will. Although decedent suffered a stroke in October 2000 at which point she went to live with petitioner and, allegedly at times thereafter, petitioner excluded other family members from seeing decedent, this occurred nearly a year after the will was executed. The only allegations of undue influence by petitioner during the relevant time period are that petitioner accused respondent of stealing at the January 1999 family meeting, and that she recommended a new attorney for decedent, accompanied decedent to the attorney’s office, and was present when the will was executed. In our view, this circumstantial evidence supports conflicting inferences “such that a conclusion of undue influence may not be drawn” (Matter of Nofal, 35 AD3d 1132, 1135-1136 [2006]; see Matter of Greenwald, 47 AD3d 1036, 1037-1038 [2008]; Matter of Friedman, 26 AD3d 723, 725-726 [2006], lv denied 7 NY3d 711 [2006]; Matter of Fellows, 16 AD3d at 997).
Lahtinen, Kane, Malone Jr. and Stein, JJ., concur. Ordered that the order is affirmed, with one bill of costs.